# IN THE UNITED STATE DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF GEORGIA
# ATLANTA DIVISION

| | |
|---|---|
| SHERRY L. RIDGWAY, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Civil Action File No. |
| | ) _____ |
| RAD SOURCE TECHNOLOGIES, INC., | ) |
| | ) |
| Defendant. | ) |

## COMPLAINT

The Plaintiff, Sherry L. Ridgway ("Ridgway"), brings this action for age discrimination and retaliation in violation of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 623 et seq. Plaintiff, Sherry L. Ridgway ("Ridgway" or "Plaintiff") seeks equitable relief; general, compensatory, and liquidated damages; costs; and attorneys' fees for the injuries she suffered from the unlawful conduct of the Rad Source Technologies, Inc. ("Rad Source" or "Defendant").

## Parties

1.

Plaintiff Ridgway is currently a resident and citizen of the State of Georgia.

2.

At all times relevant to this Complaint, Ridgway Plaintiff was an employee of Rad Source.

3.

Rad Source is located at 4907 Golden Parkway, Suite 400, Buford Georgia 30518 and may be served with process by service upon

Corporation Service Company

2 Sun Court, Suite 400, Peachtree Corners, Ga 30092

pursuant to and Fed. R. Civ. P. 4 (h).

4.

Defendant Rad Source is an employer within the meaning of the ADEA § 630 (b).

5.

At all times relevant to this Complaint, Rad Source employed more than 20 employees.

6.

On information and belief and at certain times relevant to this Complaint, the owners of Rad Source have been Weihai WEGO Equity Investment Management Co., Ltd through its managed fund Weihai WEGO Equity Investment Fund Center

LP; and Weigao Holding Company Limited and Shandon Weigao Group Medical Polymer Company Limited through their investment fund WEGO Capital.

## Jurisdiction and Venue

7.

Jurisdiction of this Court is invoked pursuant to 28 U.S.C. § 1331, § 1343 and § 1367.

8.

Venue lies in the Northern District of the State of Georgia pursuant to 28 U.S.C. § 1391 because all parties to this action reside in the boundaries of this judicial district and because the unlawful employment practices alleged in this action were committed in this district.

9.

All conditions precedent to jurisdiction under ADEA have either occurred or been satisfied; specifically, Plaintiff filed a timely charge of discrimination against Defendant(s) with the Equal Employment Opportunity Commission. The requisite Notice of Right to Sue was issued by the Equal Employment Opportunity Commission ("EEOC") on August 16, 2021. Plaintiff has brought suit within 90 days of receipt of her Notice of Right to Sue.

## Factual Allegations

10.

Rad Source hired Ridgway on May 29, 2018 to work as a Marketing Specialist.

11.

Rad Source discharged Ridgway on March 12, 2020.

12.

When hired by Rad Source, Ridgway worked under the supervision of Nathan Kroeger, the Manager of Marketing and Sales, but she interacted significantly with Will Hartman, CEO and former owner of Rad Source.

13.

On information and belief, Around 2017, Weihai WEGO Equity Investment Management Co., Ltd. (a Chinese organization), through its managed fund Weihai WEGO Equity Investment Fund Center LP, acquired or invested in Rad Source and has continued operating the business under the name "Rad Source Technologies, Inc."

14.

In the Fall of 2018, Rad Source hired George Terry as the Executive Vice President of Sales and Marketing.

4

15.

Shortly after his employment, Terry told Ridgway that she would become the Director of Marketing in January of 2019.

16.

In December 2019, Terry hired Tim Brady as the new Manager of Marketing. As the new Manager of Marketing, Brady supervised Ridgway's performance.

17.

During Brady's early work with Rad Source, Brady complimented Ridgway's work. He told Brady that she would become his "strategist", as well as manager of the third-party consultants.

18.

Following a marketing trip to Las Vegas in December 2019, Brady told Ridgway that she was "old" and began assigning her work to younger workers.

19.

Ridgway was born on December 17, 1958.

20.

Brady continued to make comments about Ridgway being "old" as well as his intent to hire a young person.

21.

Rad Source continued to reassign Ridgway's responsibilities to other persons. Rad Source had retained an outside marketing company, Adduco Communications, Inc. ("Adduco"), to handle select marketing functions. Simona Georgescu, an attractive female in her 30's, represented Adduco. When Rad Source discharged Ridgway, the Defendant had transferred most of Ridgway's responsibilities to Georgescu.

22.

On February 17, 2020, Ridgway sent an email to Don Rickett, Manager of Human Resources complaining about Brady's treatment.

23.

Rickett responded to Ridgway's email by communicating to Ridgway that Rad Source had retained Ana Dowell, a third-party investigator. Rickett directed Ridgway to meet with Dowell on Tuesday, February 25, 2020.

24.

As directed by Rickett, Ridgway met with Dowell on February 25th. Dowell introduced herself to Ridgway by saying that she had been retained by Rad Source to investigate Ridgway's complaint. Over the next two weeks, Ridgway and Dowell communicated by email and talked over the phone or in person at different times.

25.

Dowell is an attorney with Ackerman LLP. Ackerman represented Rad Source at all times during her meetings and communications with Ridgway. Ackerman continued to represent Rad Source in its response to Plaintiff's charge with the EEOC and her ongoing complaint with OSHA.

26.

On one occasion, Ridgway discussed recording conversations with Dowell. Dowell said that recording the meeting was fine.

27.

In addition to their oral and written conversations, Dowell submitted written questions and requests for documents to Ridgway. Ridgway complied with all of Dowell's directions.

28.

During the investigation, Ridgway was moved from her office and placed in a distant office that isolated her from other members of the marketing department.

29.

After remaining in the isolated office for several days, Ridgway sent another email to HR regarding the isolation. By this point, most of Ridgway's responsibilities had been reassigned and she was only allowed to perform menial tasks.

30.

During the period of investigation, Ridgway retained an attorney. Dowell then began submitting her communications to Ridgway through Ridgway's attorney.

31.

Dowell never provided to Ridgway or her attorney an explanation or the results of her investigation.

32.

On March 12, 2020, Ridgway sent an email to HR Manager Rickett. The email read,

> Hi Donald,
>
> Is the company going to state a policy for people bringing their sickness to the workplace?
>
> Also, does the company have a plan for additional cleaning of surfaces, that all employees have to touch in order to do their jobs, for the protection of all? (When we discovered Perla was at work with the flu before Christmas, I used Clorox wipes to clean every door handle or surface that anyone would touch including the kitchen area.)
>
> With so many people in the organization traveling from other areas, and especially traveling overseas, is there a quarantine period

before they return to work for the protection of all employees, whether the traveler is sick or not? Somewhere I read that the virus activates about 3 days after an individual has been exposed to it.

Is there a self-quarantine policy for anyone who has the flu that hasn't been diagnosed with coronavirus but has the symptoms?

Very kind regards,

Sherry Ridgway

33.

Sometime before noon, March 12, 2020, the same day that Ridgway sent her email to Donald Rickett, Rickett and Debbie Hughes walked to Ridgway's office. By that time, Rad Source had placed two other women in the office assigned to Ridgway. When Ricket and Hughes arrived, Rickett asked the two women to leave.

34.

After arriving in Ridgway's office on March 12, Rickett directed Ridgway to pick up the phone saying George Terry was on the line. When Ridgway picked up the phone, Terry told Ridgway that she was being discharged for "poor performance", "inappropriate behavior", and "attitude toward [her] manager." Terry would not provide any further explanation. Rickett then told Ridgway that she would be escorted out of the building and that her belongings would be shipped to her at a later date.

35.

Prior to Ridgway's March 12 email to Rickett, Ridgway had successfully performed her work and responsibilities throughout her employment with Rad Source. Ridgway had never been counseled or disciplined for any work at Rad Source. Ridgway was never accused of "poor performance", "inappropriate behavior", or having an "attitude" towards Tim Brady until Terry fired her on March 12.

## Causes of Action

### Count I
### Discrimination in Violation of the ADEA

36.

Plaintiff incorporates by reference the Paragraphs 1 through 35 as if fully restated herein.

37.

Plaintiff is a member of a protected class in that she is over age forty and suffered age discrimination by Defendant.

38.

Defendants discriminated against Plaintiff based on her age in direct violation of the ADEA, 29 U.S.C. §§ 621, et seq.

39.

Defendant's termination of Plaintiff was a materially adverse employment action.

40.

Plaintiff's age was a motivating factor in Defendant's decision to terminate Plaintiff's employment.

41.

As a direct and proximate cause of Defendant's actions and/or omissions, Plaintiff has been deprived of income, as well as other monetary and non-monetary benefits.

42.

As a direct and proximate result of Defendant's actions and/or omissions, Plaintiff has suffered a loss of self-esteem, humiliation, emotional distress, mental anguish and pain, and related compensatory damages.

43.

By failing to take prompt and effective remedial action, Defendant in effect condoned, ratified, and/or authorized the discrimination against Plaintiff.

44.

As shown by the foregoing, Defendant's conduct was willful, wanton, and malicious, and showed complete indifference to or conscious disregard for the

rights of others, including the rights of Plaintiff, thus justifying an award of punitive damages in an amount sufficient to punish Defendant or deter it and other companies from such conduct in the future.

## Count II

### Retaliation in Violation of the ADEA

45.

Plaintiff incorporates by reference the Paragraphs 1 through 35 as if fully restated herein.

46.

Plaintiff is a member of a protected class because of her age.

47.

Plaintiff complained of and opposed discriminatory treatment when she was terminated from her employment with Defendant.

48.

Plaintiff engaged in a protected activity by complaining to Defendant.

49.

Plaintiff was terminated in retaliation for exercising her right to pursue a complaint about age discrimination.

50.

Reasons advanced by Defendant as legitimate and non-discriminatory

justification of its decision to terminate her employment were false and pretextual.

51.

As a direct and proximate result of the Defendant's actions and/or omissions, Plaintiff has been deprived of income, as well as other monetary and non-monetary benefits.

52.

As a further direct and proximate result of Defendant's actions and/or omissions, Plaintiff has suffered a loss of self-esteem, humiliation, emotional distress and mental anguish and pain, and related compensatory damages.

53.

By failing to take prompt and effective remedial action, Defendant, in effect condoned, ratified and/or authorized the discrimination against Plaintiff.

54.

As shown by the foregoing, Defendant's conduct was willful, wanton, and malicious, and showed complete indifference to or conscious disregard for the rights of others, including Plaintiff, thus justifying an award of punitive damages in an amount sufficient to punish Defendant or deter it and other companies from such conduct in the future.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands a TRIAL BY JURY and requests the

following relief:

    a.    a declaratory judgment that Defendant violated the ADEA, 29 U.S.C. § 623 et seq.;

    b.    a permanent injunction, prohibiting Defendant from engaging in unlawful employment practices in violation of the ADEA;

    c.    full back pay from the date of Plaintiff's termination, taking into account all raises to which Plaintiff would have been entitled but for her unlawful termination, and all fringe and pension benefits of employment, with prejudgment interest thereon;

    d.    front pay to compensate Plaintiff for loss of earnings including future wages, benefits and pension, and loss of earnings potential;

    e.    compensatory damages for Plaintiff's emotional distress, suffering, inconvenience, mental anguish, loss of enjoyment of life and special damages;

    f.    liquidated damages for Defendant's intentional violation of ADEA rights and procedures;

    g.    attorneys' fees and costs;

    h.    pre- and post-judgment interest as allowed by law; and

    i.    all other and further relief as this Court deems just and proper.

**SIGNATURE CONTAINED ON FOLLOWING PAGE**

Respectfully submitted this 15th day of November, 2021.

                                      /s/ E. Ray Stanford, Jr.
                                      E. Ray Stanford, Jr.
                                      Georgia Bar No. 674725

Stanford IO Law Group LLC
P.O. Box 19161
Atlanta, GA 31126
Telephone: 404-991-7300
Facsimile: 404-991-7299
rstanford@siolaw.com

## **CERTIFICATION OF TYPE FONT AND SIZE**

Pursuant to LR 7.1D, the undersigned hereby certifies that the foregoing is composed of Times New Roman, size 14, and is proportionately spaced.

/s/ E. Ray Stanford, Jr.
E. Ray Stanford, Jr.
Georgia Bar No. 674725

17